IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS

| | |
|---|---|
| J.C. AND K.C., § | |
| AS PARENTS/GUARDIANS/NEXT § | |
| FRIENDS OF D.C., AN INDIVIDUAL § | |
| WITH A DISABILITY § | |
|    *Plaintiffs/Counter-Defendants* § | |
| § | CIVIL ACTION 4:19-cv-21 |
| V. § | |
| § | |
| KLEIN INDEPENDENT § | |
| SCHOOL DISTRICT § | |
|    *Defendant/Counter-Plaintiff* § | |

**PLAINTIFFS'/COUNTER-DEFENDANTS' MOTION AND BRIEF SUPPORTING
MAINTENANCE OF PLACEMENT
[ "STAY PUT" ]**

Come now Plaintiffs/Counter-Defendants and file their Motion and Brief supporting Maintenance of Placement or "Stay Put"

**I.     Background**

**A. OVERVIEW OF THE IDEA**

1. The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education [ "FAPE" ] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living" 20 U.S.C. § 1400(d)(1)(A). Under Part B of the IDEA, a state must provide disabled children between the ages of three and twenty-one with special education and related

---

services under and Individualized Education Program ["IEP"]. 20 U.S.C. § 1412 (a)(1)(A), (a)(4). An IEP is a written statement that is developed for each disabled child by an IEP team, typically consisting of the parents, a special education teacher, a representative of the local education agency, an expert, and sometimes, the child. 20 U.S.C. § 1414(d); *R.P. v. Alamo Heights Independent School District*, 703 F.3d 801, 809-810 (5th Cir. 2012); *R.H. v. Plano Independent School District*, 607 F.3d 1003, 1008 (5th Cir. 2010).

2. Under Part B of the IDEA, a state must provide children with disabilities special education and related services under an Individualized Education Program ("IEP") 20 U.S.C. § l412(a)(l)(A); 20 U.S.C. § l414(d). The educational program for a child with a disability must be "free" and at no cost to the parents. 20 U.S.C. §1401(9) ("The term 'free appropriate public education' means special education and related services that-(A) have been provided at public expense, under public supervision and direction, and without charge.")

3. Parents who are dissatisfied with the results of an IEP team meeting [in Texas, the Admission, Review and Dismissal Committee "ARDC"] may file a due process hearing complaint, which triggers a resolution session "where the parents of the child discuss their complaint" and the educational agency "is provided the opportunity to resolve the complaint … ." 20 U.S.C. §1415(f)(1)(B)(i)(IV).

4. If the complaint is not resolved "to the satisfaction of the parents within 30 days of the receipt of the complaint," the parents may proceed to a "due process hearing." 20 U.S.C. § 1415(f)(1)(B)(ii). Following such a hearing "[a]ny party aggrieved by the findings and decision … shall have the right to bring a civil action with respect to the complaint presented

pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A).

5. The minor student has a right to "stay put" in his current educational placement during the pendency of proceedings under the IDEA. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d).

### B. FACTUAL SUMMARY AND PROCEDURAL HISTORY

6. At the time of the hearing, Student D.C. was 11 years old and in 6th grade at Hofius Intermediate School in Klein ISD. He was eligible for special education as a student with a Specific Learning Disability in reading comprehension, reading fluency and basic reading skill. He was also identified as a student with Dyslexia. (Dkt. 1-1, p. 7.)

7. During the spring semester 2018, D.C. was receiving Klein ISD's Dyslexia Intervention Program (DIP). ARDC paperwork dated 04-19-18 shows: "Mrs. Marquez works with Dusty for 45 minutes 4 days a week one on one on the Dyslexia Intervention Program." (Pl.Exh. 1-2) The Student started on Lesson One of the DIP program. (Pl. Exh. 2 – 1.) The Student had reached lesson 30 by the end of the 2017-18 school year. (Pl. Exh. 2-2 and 2-4.) The school year ended on 05-31-18. (Pl. Exh. 2-3)

8. The family filed their special education due process hearing request with the Texas Education Agency and with KISD before the end of the spring semester and while the student was already receiving the DIP services on 04-27-18. (See Dkt. 1-1, p. 4) The district filed a generic answer on 05-10-18, which was after the requisite 10-day answer deadline. (See Pl. Exh. 3) The district's answer did not deny that the Student had dyslexia, nor state that the student's

DIP program was inappropriate. In fact, the district's answer states that the district's program has provided the student with a free appropriate public education. (See Pl. Exh. 3)

9. The district's written description of the DIP program was that it was "a fast-~~passed~~ (sic) pace (sic) dyslexia program designed to be used with students in grades 2-12 in a pullout program. There are 146 lessons in the program with the class meeting 4 to 5 days a week." (Exh. 4.)

10. The hearing officer rendered his decision on 11-16-18. (See Dkt. 1-1)

11. Within 90 days of the issuance of the SEHO's decision, KISD filed its appeal / counterclaim of the hearing officer's decision with this court on 02-12-19. (Dkt. 4.)

12. The hearing officer did not order cessation of the student's agreed upon DIP services or removal of the student's agreed dyslexia designation nor replacements to his areas of eligibility, but additions to them. (See Dkt. 1-1) However, even assuming arguendo that he had, by virtue of the district's appeal of the SEHO's decision, stay put was triggered and the agreed upon services and eligibility areas that were already in place must remain in place through the conclusion of the appeal.

13. In his orders, the hearing officer stated "4. The District shall provide Student <u>an additional 108 hours</u> of compensatory education in a one-on-one setting focused on reading comprehension and related skills using Read 180 ..." (See Dkt. 1-40) (emphasis added.)

14. The use of the word "additional" makes clear that the SEHO was ordering services that went above and beyond what the district was already doing, and not as a substitute or alternative for the services already offered and in progress. The two programs are not mutually exclusive, i.e. the student can continue to receive his stay put DIP program while also receiving

_____

Civil Action No. 4:19-cv-21
*Student v. Klein ISD*
**Plaintiffs'/Counter-Defendants' Brief Supporting Motion for Maintenance of Placement**
Page 4 of 12

the additional hearing officer-ordered 108 hours of compensatory services. He also ordered 45 minutes of services five days a week of comprehension remediation for one year. (See Dkt. 1-39)

15. Despite D.C's right to stay put, after the SEHO decision was rendered, KISD has proposed cessation of the student DIP services and other fundamental changes in his programming and areas of eligibility, in clear violation of his stay put rights.

16. The planned violation of the student's stay put rights was memorialized in a letter dated 02-13-19 that stated "by way of reminder, KISD intends to implement the IEP developed at the February 12, 2019, ARD meeting beginning on Wednesday, February 20, 2019." (Pl. Exh. 5.)

17. Specifically, the IEP dated 02-12-19 alters the student's DIP services, instead supplying him a different program that is not agreed upon. It also proposed removal of his identification as a student with dyslexia. (See relevant portions of IEP, Pl. Exh. 6.)

18. In a series of emails dated 01-14-19, 01-25-19, 01-28-19 and 02-15-19, counsel for D.C. attempted to resolve the stay put concern with counsel for KISD. Unfortunately, no agreement was reached, necessitating this motion. (A copy of the emails is available upon request.)

## II.   DISCUSSION

19. The IDEA provides that "[d]uring the pendency *any* proceedings conducted pursuant to [ § 1415 ], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain the then *current educational placement* of such child … ." 20 U.S.C. § 1415(j) (emphasis added); 34 C.F.R. § 300.518(a), (d). "[C]ommonly referred to as the 'stay

_____

Civil Action No. 4:19-cv-21
*Student v. Klein ISD*
**Plaintiffs'/Counter-Defendants' Brief Supporting Motion for Maintenance of Placement**
Page 5 of 12

put' provision, [§ 1415(j) requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved." *Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1179 (9th Cir. 2002). As long as judicial proceedings about the hearing officer's order are pending, the school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings. *Houston Independent School District v. V.P.*, 582 F.3d 576, 591-595 (5th Cir. 2009) *cert denied* 559 U.S. 1007(2010); *Joshua A. v. Rocklin Unified School Dist.*, 559 F.3d, 1040 (9th Cir. 2009).[1]  *Houston ISD v. V.P.* stated: "*Burlington* and Section 300.518 transform a hearing officer's order adopting a private placement into an agreement that the private school is necessary to carry out the requirements of the IDEA. That placement is at "no cost" to the parents of the child. 20 U.S.C. §1412(a)(10)(B)(i)." *ld.* at 595.

20.  The purpose of the stay-put rule is "to maintain the status quo while the placement-review is pending . . . ." *Stacey G. v. Pasadena Indep. Sch. Dist.*, 695 F.2d 949, 953 (5th Cir. 1983). Further, courts have recognized Congress's intent to "strip schools of the 'unilateral authority they had traditionally employed to exclude disabled students . . . from school' and to protect children from any retaliatory action by the agency." *Johnson ex rel. Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1181 (9th Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305 (1988)); *see Sch. Comm. of Town of Burlington, Mass. v.*

---

[1] The Texas Education Commissioner's Rules pertaining to special education matters have a similar provision, stating: "In accordance with 34 CFR, §300.518(d), a school district shall implement any decision of the hearing officer that is, at least in part, adverse to the school district in a timely manner within ten school days after the date the decision was rendered. School districts must provide services ordered by the hearing officer, but may withhold reimbursement during the pendency of appeals." 19 TEX. ADMIN. CODE §89.1185.

_____

Civil Action No. 4:19-cv-21
*Student v. Klein ISD*
**Plaintiffs'/Counter-Defendants' Brief Supporting Motion for Maintenance of Placement**
Page 6 of 12

*Dep't of Educ. of Mass.*, 471 U.S. 359, 373 (1985) (noting that at least one purpose of the stay-put rule is to prevent school officials from moving a child "over the parents' objection pending completion of the review proceedings").

21. Indeed, "[o]ne of the obvious purposes of the 'stay-put' provision is to reduce the chance of a child being bounced from one school to another, only to have the location changed again by an appellate court." *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 694 (5th Cir. 1996), *cert. denied*, 519 U.S. 111 (1997).

22. The term "current educational placement" is not defined in the IDEA. *See* 20 U.S.C. § 1400, *et seq.* The United States Court of Appeals for the Fifth Circuit has interpreted the term to mean the education program in which the student is currently placed, not the particular institution where that program is implemented. *Veazey v. Ascension Parish Sch. Bd.*, 121 F. App'x 552, 553 n.6 (5th Cir. 2005), *cert. denied*, 546 U.S. 824 (2005); *White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003). Specifically, the term "relates to a 'setting,' such as regular classes, special education classes, special schools, home instruction, or hospital or institution-based instruction." *Comb v. Benji's Special Educ. Acad., Inc.*, 745 F. Supp. 2d 755, 769 (S.D. Tex. 2010) (citing *White*, 343 F.3d at 379); *accord Seashore Charter Sch. v. E.B.*, No. 2:14-CV-345, 2014 WL 4364863, at *1 (S.D. Tex. Sept. 3, 2014). Significantly, "the IDEA's stay-put provision is an 'automatic' 'procedural safeguard.' As such, obtaining a stay-put order under the IDEA does not require a showing on the merits." *Tina M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57, 60 (5th Cir. 2016) (quoting *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009)), *cert. denied*, 137

_____

Civil Action No. 4:19-cv-21
*Student v. Klein ISD*
**Plaintiffs'/Counter-Defendants' Brief Supporting Motion for Maintenance of Placement**
Page 7 of 12

S. Ct. 371 (2016). See also *Houston Independent School District v. V.P.*, 582 F. 3d 576 (5th Cir. 2009).

23. Under the most recently *implemented* IEP, D.C.'s current educational placement is in the district's DIP program as a student with dyslexia. *See, e.g., N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1114 (9th Cir. 2010) ("We have interpreted 'current educational placement' to mean 'the placement set forth in the child's last implemented IEP.'" (citing *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902 (9th Cir.), *cert. denied*, 558 U.S. 819 (2009))); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) (looking to valid IEP in place to determine "then current educational placement").

24. The Southern District of Texas also has opined on stay put, albeit in an unreported decision. *Fort Bend Independent School District v. Z.A.*, Dkt. No. 4:13-cv-001063, Order of the Court dated November 6, 2013 (Attached as Exh. 7).[2] *Fort Bend Independent School District v. Z.A.*, IDELR 231, 2014 WL 11531397 (S.D. Tx. 2014); 62 IDELR 1, 601 Fed. Appx. 250 (5th Cir. 2015). This Court should do likewise.

25. The Eastern District of Texas also has opined on the subject of a special education student's stay put / pendency rights in *Barragan v. Port Arthur ISD*, Dkt. No. 1:17-cv-385, Memorandum and Order dated January 30, 2018, (Attached as Exh. 8.)

26. A student may file a stay put motion during the pendency of any judicial proceeding, including an appeal from a hearing officer's decision following a due process hearing. Id. At 1038-39. "A motion for stay put functions as an 'automatic preliminary injunction, meaning that the moving party need not show the traditionally required factors (*e.g.*, irreparable harm) in order

---

[2] Appellate Rules of Civil Procedure, Rule 32.1 permits citation to certain unreported decisions.

to obtain preliminary relief." *Joshua A.,* 559 F.3d at 1037; *accord Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir. 1982) ("[p]endency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."); *Pardini v. Allegheny Intermediate Unit,* 420 F.3d 181, 190 (3rd Cir. 2005) (quoting Zvi D.); *Casey K. v. St. Anne Community High Sch. Dist. No. 202,* 400 F.3d 508, 511 (7th Cir. 2005) (stay put imposes an automatic statutory injunction). In fact, "the stay put provision requires no specific showing on the part of the moving party … and no balancing of equities by the court … ." Id. at 1040. The simplified procedure for obtaining a stay-put order is consistent with its purpose, which is "to ensure the child is not treated as a ping-pong ball, ricocheting between placements with each new ruling in the dispute between parents and school." *Ashland School Dist. V. V.M.,* 494 F. Supp. 2d 1180, 1229 (D. Or. 2007). The Supreme Court has stated that the purpose of stay put is "[t]o strip schools of the unilateral authority they had traditionally employed to exclude children with disabilities from school." *Honig v. Doe,* 484 U.S. 305, 323 (1988).[3] It is to "ensure that the child's educational needs are met during the pendency of proceedings by preserving the continuity of the child's education by maintaining the child's educational status quo." *Board of Educ. of Community High Sch. Dist. No. 218 v. Illinois State Bd. Of Educ.,* 103 F.3d 545, 546 (7th Cir. 1996). The stay put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their

---

[3] *See also Schaffer v. Weast*, 546 U.S. 49, 59, (2005) (discussing the import of Congress's decision to include the stay-put provision).

_____

Civil Action No. 4:19-cv-21
*Student v. Klein ISD*
**Plaintiffs'/Counter-Defendants' Brief Supporting Motion for Maintenance of Placement**
Page 9 of 12

placement is ultimately resolved." *Susquenita School Dist. v. Raelee S.,* 96 F.3d 78, 83 (3d Cir. 1996).

27. Where there has been an order issued in a due process hearing, the Courts imply an agreement between the parents and the school district that the placement in the hearing officer's decision is the current educational placement. *Sch. Comm. Of the Town of Burlington v. Mass. Dep't of Educ.,* 471 U.S. 359, 372-73 (1985). The IDEA's implementing regulations, promulgated by the Department of Education in 2006, confirm this rule, providing that "[i]f the hearing officer in a due process hearing … agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents" for purposes of the stay put provision. 34 C.F.R. § 300.518(d); 71 Fed. Reg. 46709 (August 14, 2006).

28. Here, it is without question that the student's DIP program and designation of dyslexia must remain in place for purposes of the stay put provisions of the IDEA. 34 C.F.R. § 300.518(a), (d). Whether or not the hearing officer is correct in his decision, as contested by KISD in its appeal, is irrelevant to the determination of the current educational placement for purposes of a stay-put order.

## III. <u>CONCLUSION</u>

29. For the reasons stated above, D.C.'s ongoing placement and services are expressly protected by the IDEA statute's stay-put provision. 20 U.S.C. §1415(j). Removal of his DIP services and his designation as a student with dyslexia while the instant action is still ongoing would deprive him of his state and federal legal rights granted by a federal statute, regulations and

state rules. Defendant's failure to concur as to the student's stay put placement and program is precluded by federal statute. Plaintiffs'/Counter-Defendants' request that the Court enter an order of stay put should be granted, along with such other relief as is appropriate.

Respectfully submitted,

**PHILPOT LAW OFFICE PLLC**

By: */s/ Dorene Philpot*
Dorene Philpot
Texas State Bar No. 24055011
7314 Offats Pointe
Galveston, Texas 77551
281.989.2010 (phone)
866.324.4995 (fax)
fape4kids@gmail.com

**CERTIFICATE OF CONFERENCE**

I certified that in a series of emails dated 01-14-19, 01-25-19, 01-28-19 and 02-15-19, I attempted to resolve the family's stay put concerns with Amy Tucker, counsel for KISD. Unfortunately, no agreement was reached, necessitating this motion. (A copy of the emails is available upon request.)

*/s/ Dorene Philpot*
Dorene Philpot

## **CERTIFICATE OF SERVICE**

I hereby certify on the 19th day of February 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to the following:

Amy Tucker,
Attorney for Klein Independent School District

*/s/ Dorene Philpot*
Dorene Philpot, Counsel for
Plaintiffs/Counter Defendants